**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Cornelius McCLENDON, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 14, 2005.

Filed May 2, 2005.

Marissa J. Brumbach, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: STEVENS, ORIE MELVIN, and JOHNSON, JJ.

STEVENS, J.

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County, after Appellant was retried[1] and convicted by a jury of Aggravated Assault, Violations of the Uniform Firearms Act, and Possession of an Instrument of Crime. Challenged are the sufficiency of the evidence offered at trial, admission of the victim's videotaped deposition testimony in lieu of live testimony, prosecution and instruction on accomplice liability, instruction on self-defense/justification, and the court's refusal to continue the case to accommodate Appellant's firearms expert's schedule. We affirm.

¶ 2 The trial court opinion's apt summary of facts is as follows:[2]

. On February 4, 1999, Raphael Richburg and his wife, Sharon Scott, left their home at 50th and Ogden Streets in Philadelphia when they saw Appellant, Cornelius McClendon with two other men. N.T. 9/18/03 at 54. The Richburgs and Appellant had known each other from the neighborhood for many years. They began to talk about Mr. Richburg's Jeep which had been shot several times. N.T. at 58. [The Richburgs had attributed the neighborhood shootings to a drug war between rival gangs, and they believed Appellant was a gang member of influence who could prevent the shootings in their neighborhood].

Suddenly, two [more] men came running with guns from a nearby playground alleyway. N.T. at 59. Gunfire erupted all around the Richburgs. N.T. at 60–61. Mr. Richburg pushed his wife to the ground to protect her. N.T. at 60. After the men left, Mrs. Richburg found her husband on the ground[;] he had been shot. N.T. at 61. Mrs. Richburg testified that she saw Appellant with a gun in his hand during the shooting and she saw him flee with the other two men who accompanied him before the shooting. N.T. at 69.

[On cross-examination, defense counsel established that Mrs. Richburg's testimony was inconsistent with her initial statement given to investigating officers, to whom she identified only four gunmen, Appellant not among them. On redirect, the prosecution established that Mrs. Richburg gave her initial statement hastily while in transit down a

---

**1.** This Court vacated the first judgment of sentence and remanded for a new trial based on the trial court's erroneous refusal to instruct the jury on self-defense. *Commonwealth v. McClendon*, 1758 EDA 2001, un-

published memorandum, 817 A.2d 1181 (Pa.Super. filed December 10, 2002).

**2.** We have inserted additional pertinent facts, which are identified in brackets.

hospital hallway as her husband's life was in jeopardy.

A videotaped deposition of Mr. Richburg was procured before the first criminal trial for fear that Mr. Richburg would not survive his wounds. Mr. Richburg did survive, however, and managed to testify in person at the first trial. Just prior to the second trial, the prosecution informed the court that a kidney stone and the narcotic effects of prescribed pain medication rendered Mr. Richburg unavailable to testify. Mrs. Richburg testified as to Mr. Richburg's condition in this respect. In lieu of live testimony, the prosecution moved for the admission of Mr. Richburg's videotaped deposition. Defense counsel disputed Mr. Richburg's unavailability, given the infrequent occurrence of Mr. Richburg's kidney stones and their usually short duration—less than ten days, according to the testimony of Mrs. Richburg. Counsel also raised a confrontation clause objection, and questioned the fairness of admitting the tape when her defense theory differed from prior counsel's.

Over counsel's objections, the court granted the prosecution's motion to declare Mr. Richburg unavailable and to admit his videotaped deposition at trial. In support of its ruling, the court cited the over 1300-day age of the case, its familiarity with Mr. Richburg's lingering poor health and poor prospects for a quick recovery, the practical identity between Mr. Richburg's videotaped testimony and his expected live testimony at trial (as inferred from Mr. Richburg's live testimony at first trial), and the opportunity for defense counsel to impeach the videotaped testimony through use of Mr. Richburg's live testimony transcript from Appellant's first trial. N.T. at 3–21.]

The videotape of [Mr. Richburg's] testimony appears no longer to be part of the court record. Defense counsel requested and was granted the right to supplement or otherwise indicate to the jury where the videotape testimony differed from [Mr. Richburg's] testimony from the first trial. N.T. at 21. Mr. Richburg testified [on tape], similar to his trial testimony, that he knew Appellant, was speaking with him as the shooting began, and saw him pull a gun out of his pocket. He also testified that he saw [Appellant] "fiddle" with his gun after shooting it.

[Philadelphia] Police Officer [William] McKenzie testified as the ballistics expert in the case. N.T. at 110. He examined the gun that was found at the scene of the shooting and found it operable but susceptible to jamming after several shots were fired, then requiring [significant] manipulation [involving more than a single hand], to continue shooting. [One of the ten fired bullet casings recovered at the shooting scene was attributable to this gun.] N.T. at 81, 111–117.

Karen Auerweck, a civilian crime scene investigator, testified regarding the crime scene. N.T. at 79. She photographed and diagramed the evidence recovered from the scene, including: a .9 millimeter pistol, ten fired cartridge cases from a .9 mm pistol and bullet fragments from a .9 mm pistol. N.T. at 83. Detective Frank Martin testified regarding his work with the victims in this case. N.T. at 97–104. He testified that the day following the shooting, [Mrs.] Richburg was able to pick [neighborhood acquaintance] Appellant out of [a] photo spread within seconds. N.T. at 100. Similarly, Mr. Richburg identified [longtime acquaintance] Appellant without trouble. N.T. at 102.

Trial Court Opinion 3/29/04 at 1–3.

¶ 3 The jury returned guilty verdicts on all charges, apparently considering the

Richburgs' respective eyewitness accounts of Appellant having and/or firing a gun that immediately jammed on him, coupled with ballistics testimony establishing that a defective handgun highly prone to jamming fired one of the bullet casings recovered at the scene. Appellant consented to an immediate sentencing, as the original pre-sentencing report prepared after the first criminal trial remained current, given Appellant's continuous incarceration from his first conviction. The trial court sentenced Appellant to ten to twenty years' imprisonment for aggravated assault, and three and one-half to seven years imprisonment for VUFA, sentences to run consecutively. This appeal followed.

¶ 4 Appellant briefs the following statement of questions presented:

I. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT AS TO ALL THE CHARGES BEYOND A REASONABLE DOUBT.

II. WHETHER THE TRIAL COURT IMPROPERLY CONCLUDED COMPLAINANT RAYFIELD RICHBURG WAS UNAVAILABLE FOR PURPOSES OF TRIAL WHEREBY PERMITTING THE USE OF A VIDEO DEPOSITION IN LIEU OF LIVE TESTIMONY AND OR READING OF THE TRANSCRIPTS FROM HIS TESTIMONY PRESENTED AT THE FIRST TRIAL OF [APPELLANT].

III. WHETHER THE TRIAL COURT IMPROPERLY OVERRULED [APPELLANT'S] OBJECTION TO THE PROSECUTION ARGUING ACCOMPLICE LIABILITY AND THE COURT'S GIVING A JURY INSTRUCTION ON SAME.

IV. THE TRIAL COURT ERRED IN FAILING TO PERMIT THE DEFENSE FIREARMS EXPERT FROM TESTIFYING ON SEPTEMBER 22, 2003.

Brief for Appellant at 3.

 ¶ 5 When reviewing a sufficiency of the evidence claim, we employ the following standard of review:

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part, or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Robinson,* 817 A.2d 1153, 1158 (Pa.Super.2003) (quoting *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745 (2000)) (citation omitted).

¶ 6 Under the Crimes Code, a person may be convicted of aggravated assault, graded as a felony of the first degree, if he/she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Malice is a crucial element of aggravated assault, and is established when there is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, *although a particular person may not be intended to be injured." Commonwealth v. Kling,* 731 A.2d 145 (Pa.Super.1999) (emphasis added). *See also Commonwealth v. Mosley,* 401 Pa.Super. 537, 585 A.2d 1057 (1991)(en banc) (holding evidence sufficient to sustain aggravated assault conviction from incidental shooting of an innocent bystander during a gunfight between gangs). Where malice is based on a reckless disregard of consequences, it must be shown that the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury; at the very least, the conduct must be such that one could reasonably anticipate death or that serious bodily injury would likely and logically result. *Id.* at 147–148.

¶ 7 As we did from virtually identical evidence adduced at Appellant's first trial, we find the evidence sufficed to prove that Appellant took part in a gunfight in reckless disregard of the high risk of serious bodily injury that could likely result. Specifically, both Mr. and Mrs. Richburg saw Appellant immediately pull a gun from his jacket as gunfire began to exchange, Mr. Richburg stated that Appellant fired his gun and then "fiddled" with it as if it had jammed, and ballistics evidence demonstrated that the same type of gun prone to jamming was fired from the spot described by Mr. Richburg. We thus find no merit to the sufficiency challenge raised against Appellant's aggravated assault conviction.

¶ 8 Also without merit is the sufficiency challenge to the Commonwealth's alternate aggravated assault theory based on accomplice liability, as the same evidence, again viewed in the light most favorable to the Commonwealth as verdict winner, demonstrated Appellant's active participation in the gunfire which both aided his cohorts and was intended to facilitate crime. *See Commonwealth v. Vining,* 744 A.2d 310, 321 (Pa.Super.2000) (transcending mere association, accomplice liability requires active and purposeful participation in criminal activity with others). Appellant's prior acquittal on conspiracy charges, moreover, would not have precluded this finding, if actually made by the jury, as accomplice liability and conspiracy are not one and the same crime. Conspiracy requires proof of an additional factor which accomplice liability does not—the existence of an agreement. *Commonwealth v. Murphy,* 795 A.2d 1025 (Pa.Super.2002). Accordingly, Appellant's second sufficiency challenge is without merit.[3]

¶ 9 Finally, we reject Appellant's challenge that evidence was insufficient to overcome his defense theory of justifiable self-defense, as advanced in cross-examination of Commonwealth witnesses. Where an accused raises the defense of self-defense under Section 505 of the Pennsylvania Crimes Code, the burden

---

**3.** Finding evidentiary support for a charge on accomplice liability, we reject Appellant's related claim that the court erred in giving an accomplice liability instruction.

is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. *Commonwealth v. Yanoff*, 456 Pa.Super. 222, 690 A.2d 260 (1997). The Commonwealth sustains this burden if "it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *Id.* at 264 (citations omitted). It remains the province of the jury to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat. *Commonwealth v. Buksa*, 440 Pa.Super. 305, 655 A.2d 576 (1995).

¶ 10 Taking the evidence in a light most favorable to the Commonwealth as verdict winner, we find that the Commonwealth sufficiently disproved Appellant's defense of self-defense by establishing that Appellant was not free from fault in provoking or continuing the gunfire that erupted around the Richburgs. Specifically, the evidence showed that the shootout was but part of an ongoing armed war between rival neighborhood gangs, with Appellant and his cohorts electing to stand their ground, draw their weapons, and initiate fire upon seeing two armed rivals approaching from a nearby alleyway.

¶ 11 First, evidence sufficed to conclude that Appellant belonged to a drug-dealing gang responsible for shootouts in the neighborhood. Mrs. Richburg described how rival gangs headed by "Ty" and "Mikey," respectively, regularly engaged in gun battles for control of the neighborhood drug market. According to the Richburgs, one such exchange put bullet holes in the Richburg's jitney bus. Just before the gunfight at issue here, Mr. Richburg spoke with Appellant upon seeing him in front of the Richburg's home, and asked Appellant to send a message to his boss, Ty, that he wished to be reimbursed for the damage to the jitney bus. Appellant agreed to deliver the message. Months after the gunfight, Ty's brother presented the Richburgs with an envelope containing $300, which, Mrs. Richburg said, was offered for the damaged jitney bus. Further tying Appellant to this local drug trade was evidence that he carried a large number of crack cocaine packets on his person when he was eventually arrested on the present charges.

¶ 12 Second, evidence sufficed to conclude that Appellant and his cohorts participated in the shootout not in self-defense, but as gangland soldiers who considered no option but gunfire upon seeing two armed rivals approaching. As noted, *supra,* the videotaped deposition of Mr. Richburg was inexplicably missing from the certified record assembled for this appeal, and no transcription of the videotape playback was taken during trial. Counsel for Appellant, moreover, remains silent on the absence of the videotape, and has made no apparent effort to secure a copy or transcription of the videotape for this appeal. The Commonwealth, in its brief, makes a motion to expand the record to include the November 9, 2000 transcription of the deposition.

¶ 13 Therefore, we do not have Mr. Richburg's exact testimony played for the jury. Nevertheless, his other sworn testimony appearing in the record, both parties' and the court's appellate accounts of Mr. Richburg's videotaped testimony, and the fact that defense counsel did not impeach the videotape account with the prior sworn testimonies either at trial or in her zealous and thorough appellate brief, collectively work to dispel any concern that Mr. Richburg's taped testimony differed

from his other sworn testimonies appearing in the certified record. Accordingly, we decline to delay disposition of this appeal pending receipt of a videotape testimony transcription, particularly since there is nothing of record to suggest that one even exists.

¶ 14 Mr. Richburg's account of the shooting remains consistent throughout police statements and court documents filed in the certified record, which include a statement he gave to police on June 8, 1999, when he was first physically able to give an interview, a transcript of his February 23, 2000 preliminary hearing testimony, and a transcript of his May 15, 2001 live testimony at Appellant's first criminal trial.

¶ 15 Each account indicates that both groups drew guns at roughly the same time and instantly began firing at one another. In his initial statement to police, Mr. Richburg states that "[t]wo males came out of the alley, the 2 males with [Appellant] pulled guns and the 2 males coming out of the alley pulled guns. [Appellant] then pulled out a Mac 9. [Mr. Richburg] stated he saw [Appellant] fire the weapon at him striking him once. The other males also fired." Police Statement 6/8/99.

¶ 16 The preliminary hearing transcript documents Mr. Richburg's testimony as follows:

Q: Who was the first guy that did the shooting?

A: His friends.

Q: Those other two guys?

A: Right.

Q: He wasn't involved in that?

A: He was close to me. He came back over there to the truck.

Q: Mr. McClendon moved towards you?

A: Yeah.

Q: Did he have a gun in his hand?

A: When I told him not to do nothing that's when he was pulling out the gun. He had the gun, yes, sir.

Q: So, he hadn't shot when the first two shots came out?

A: No.

Q: Who did the first two shots?

A: His friends were shooting.

N.T. 2/23/00 at 11–12.

¶ 17 Finally, the trial transcript from Appellant's first trial documents Mr. Richburg's testimony as follows:

Q: Now, as you saw these two guys come out of the alleyway, had you ever seen them before in the neighborhood?

A: Yes.

Q: And who did they work for, Ty or Mikey?

A: Mikey.

Q: What happened as Mikey's boys came out of the alleyway?

A: As soon as they seen one another, they started pulling guns out.

N.T. 5/15/01 at 45–46.

¶ 18 On this testimony, which appears by all certified documents to have been reiterated in Mr. Richburg's videotaped deposition played at Appellant's second trial, the jury could have reasonably concluded that Appellant's gunfire in question was not made in justifiable self-defense, but was made in provocation or continuation of the difficulty which produced the force at issue. Appellant is described as a voluntary participant in an ongoing neighborhood drug war; Appellant's cohorts are said to have instantly drawn their guns as they see their rivals emerge from an alleyway; and Appellant opts to "dig" in his jacket for his gun rather than flee, despite having some distance (he was furthest from the alleyway, with four people be-

tween himself and the rivals) and time (Mr. Richburg managed to run to his wife to push her down while imploring Appellant not to shoot—all before Appellant squeezed off his first shot) in his favor. Given this record, we find no error with the jury finding self-defense disproved. *See Mosley, supra* (holding evidence sufficient to disprove self-defense; defendant voluntarily attended "one-on-one" fistfights before a large assembly of two rival gangs; rival gang member drew a gun, and defendant and others from his gang drew theirs, gunfire erupted, killing a young female bystander as she attempted to leave the scene). *Compare Commonwealth v. Fowlin*, 551 Pa. 414, 710 A.2d 1130 (1998) (dismissing aggravated assault charges for gunshot injury to innocent bystander where the accused, who had simply been sitting at a bar, justifiably fired his gun multiple times at three attackers who had ambushed him, thrown him to the floor, stayed on top of him to continue the attack, maced him to near-blindness, and pointed a gun in his face).

¶ 19 Appellant also contends, however, that the court delivered an inadequate jury instruction on self-defense/justification. Specifically, Appellant alleges error with the court's modified standard jury instruction, and including a "choice of harms or evils" instruction. We find no reversible error with the instruction.

¶ 20 In reviewing a challenged jury instruction, we must review the charge not in isolated portions but as a whole to ascertain whether it fairly conveys the required legal principles at issue. *Commonwealth v. Bracey*, 831 A.2d 678 (Pa.Super.2003). A trial court possesses broad discretion in phrasing its instructions to the jury and is not limited to using particular language provided the law is clearly, adequately, and accurately presented to the jury. *Id.*

¶ 21 In our first order and opinion vacating judgment of sentence and remanding for new trial, this Court determined that a self-defense defense was among the possible reasonable inferences a jury could make from the Richburg's eyewitness accounts. Despite our decision, and over the objection of defense counsel, the trial court was of the opinion that standard jury instructions on self-defense and aggravated assault were troublesome in a case, such as this, involving assault on an innocent bystander. Indeed, the trial transcript shows considerable discussion between the court and both counsel on how to word a justifiable self-defense charge in this case. N.T. 9/19/03 at 60–77.

¶ 22 Ultimately, the trial court instructed the jury as follows:

**THE COURT:** Now, you have heard argument concerning self-defense or what we refer to as justification. Generally speaking, if you find justification in this case, it is a complete defense to the charge of aggravated assault.

Now, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in justifiable self-defense. In this case, the law of self-defense or justification, allows the defendant to use deadly force if he reasonably believed that some other persons were placing him in immediate danger of death or serious bodily injury; however, the general rule is limited by the following: The defendant must be free from provoking or continuing the dispute which led to his use of deadly force and that the defendant did not violate a duty to retreat.

In this case the defendant had a duty to retreat, that is, to leave the area, before resorting to deadly force in self-defense if he knew that he could avoid the neces-

sity of using deadly force with complete safety by leaving the area.

Now, in addition, **the justification rule will not apply** if the defendant was negligent or reckless in bringing about the situation requiring a choice of harms or evils or in raising the necessity of his conduct.

**In this case, if you find that the defendant engaged in negligent or reckless conduct which caused another party to fire a gun at the defendant, justification would not be a defense to the charge of aggravated assault.**

N.T. 9/19/03 at 84–85 (emphasis added).

¶ 23 Appellant first argues that the court misled the jury when it changed the standard instruction on the justification rule—bolded in the penultimate paragraph, *supra*—from "the justification rule is negated completely if" to "the justification rule will not apply if. . . ." Though a semantic difference exists between "will not apply" and "is negated completely," we find the practical effect of either instruction is to inform the jury that a defendant's recklessly bringing about the difficulty which raised the necessity of his self-defense conduct would defeat his defense of justification. Thus, we find no error with this aspect of the instruction.

¶ 24 Appellant next argues that the final bolded portion of the instruction worked an "opt out clause to the self-defense clause," by essentially negating the possibility of self-defense if Appellant had acted recklessly—the key element in the underlying aggravated assault charge.

¶ 25 Appellant, however, misconstrues the charge, for it does not permit the jury to negate self-defense if it finds that Appellant committed aggravated assault through reckless conduct. Rather, it permits the jury to negate self-defense if it finds that Appellant recklessly brought about or caused the rivals to fire their guns at Appellant. While perhaps superfluous, this instruction is simply a case-specific instruction of the general "choice of harms or evils" instruction above, and is likewise tantamount to the standard self-defense charge's prohibition against provocation or continuation of the difficulty. We find no error in its making.

¶ 26 The next claim we address is Appellant's contention that the court violated his constitutional right to cross-examine and confront witnesses against him when the court admitted Mr. Richburg's videotaped deposition at trial upon finding Mr. Richburg unavailable to testify. We disagree.

¶ 27 We have stated that:

Our state constitution provides in pertinent part: "In all criminal prosecutions the accused hath a right. . .to meet the witness face to face. . . ." Pa. Const. art. I, § 9. This clause and similar provisions in other state constitutions as well as the Sixth Amendment to the United States Constitution are firmly rooted in the history of Anglo–Saxon jurisprudence. . . . Case law, history, and the plain language of our constitution establish that in Pennsylvania, the right of confrontation means that a person has the right to meet his accuser face to face in the courtroom. . . . Though the right to confrontation is important it is not absolute. **Face to face confrontation may be the constitutional ideal, but many adjustments and exceptions to the ideal are constitutionally permissible. . . .**

*Commonwealth v. Bourgeon,* 439 Pa.Super. 355, 654 A.2d 555, 556–57 (1994) (citation deleted). In *Bourgeon,* the trial court found a minor victim of alleged sexual abuse unavailable to testify because of physical and psychological manifestations of trauma at the prospect of testifying

again at a second trial. The audiotape of the minor's testimony from the first trial was therefore admitted at the second trial. We found no constitutional violation where the taped testimony was given in the presence of the defendant, who had ample opportunity to face and cross-examine his accuser. *Id.* at 557.

¶ 28 Here, we first reject Appellant's contention that Mr. Richburg was not unavailable for trial, as there was unrebutted testimony that he suffered both significant pain from kidney stones and decreased mental acuity from taking prescription pain killers. The trial court was already familiar with the highly-compromised health of Mr. Richburg and could not reasonably predict immediate resolution of Mr. Richburg's condition. Declaring Mr. Richburg unavailable for trial under the facts known to the court was, therefore, reasonable.

¶ 29 We also reject Appellant's next contention that admission of the videotape violated his constitutional rights to confrontation and cross-examination. As in *Bourgeon,* Appellant had ample opportunity to cross-examine Mr. Richburg in the videotaped deposition, and did so. Moreover, though present counsel argued to the trial court that she would have asked different questions than were asked by first counsel, she was unable to specify to any meaningful degree how her questions would have differed. Finally, counsel was given the opportunity to impeach the videotape with any prior sworn statement offered by Mr. Richburg in this case, including his original trial testimony. Under these facts, we find no constitution violation in the admission of Mr. Richburg's videotaped deposition.

■ ¶ 30 Finally, Appellant charges error with the trial court's refusal to continue the trial start date to accommodate his firearms expert, whose exclusion, Appel-

lant argues, was prejudicial. We note initially that the transcript of September 17, 2003 shows that defense counsel never objected to the court's ruling that trial would start the next day regardless of the defense firearms expert's availability. Such failure to offer a timely and specific objection results in waiver of this claim. *Commonwealth v. Guilford,* 861 A.2d 365 (Pa.Super.2004). Even if we were to find the issue preserved, moreover, Appellant provides no standard of review governing this claim, nor does he cite any authority to support his position that another continuance was required after having already received a continuance months earlier to obtain a firearms expert. The failure of Appellant to sufficiently explain and support his claim results in its waiver. Pa. R.A.P. 2119(b).

¶ 31 Judgment of sentence is affirmed.