## Commonwealth v. Cepeda

*Kevin F. Howard,* for Commonwealth.
*John F. Cicilline, David R. Eshelman,* and *Allen J. Daringer,* for defendant.

BUCCI, *J.,* October 29, 2008—

### PROCEDURAL HISTORY

On April 20, 2006, following a jury trial, Jeffery Cepeda (appellant) was convicted of murder of the third

degree,[1] aggravated assault,[2] firearms not to be carried without a license,[3] possession of instruments of crime[4] and possession of a weapon.[5]

On June 23, 2006, appellant was sentenced to incarceration for a period of not less than 15 years nor more than 30 years. Appellant did not file a timely appeal to the Superior Court. However, on November 30, 2006, appellant filed a pro se motion for post-conviction relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §9541 et seq. In consideration of appellant's timely PCRA petition, the court granted appellant's request for leave to appeal nunc pro tunc. On August 15, 2008, appellant filed a timely notice of appeal nunc pro tunc to the Superior Court. On August 18, 2008, the court ordered appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On September 8, 2008, appellant filed a concise statement wherein he simply alleges that the evidence was insufficient to sustain the guilty verdicts and that the Commonwealth failed to prove that the defendant did not act in self-defense.

## FACTUAL BACKGROUND

Rene Castro was 19 years old when he was shot and killed by the appellant on New Year's Eve. At approximately 1 a.m. on December 31, 2004, the victim, Rene Castro, was walking in the 1600 block of Perkiomen

1. 18 Pa.C.S. §2502(c).
2. 18 Pa.C.S. §§2702(a)(1), (a)(4).
3. 18 Pa.C.S. §6106(a)(1).
4. 18 Pa.C.S. §907(a).
5. 18 Pa.C.S. §907(b).

Avenue, City of Reading, Berks County, Pennsylvania, which was approximately one block from his residence. The appellant lived at 1537 Perkiomen Avenue and the two men had been acquaintances. Several weeks prior to that fateful night of December 31, 2004, the two men had an argument over the ownership of a dog as well as who was responsible for the care and feeding of the dog. A few days before the night of December 31, 2004, appellant invited Rene Castro to engage in a fistfight at a nearby mini-market. Rene Castro refused to engage in the fight at that time.

Evidence at trial showed that Rene Castro was carrying a 9-mm handgun and wearing a ballistic bulletproof vest on the night of his death. However, he did not have an opportunity to pull his weapon before he was shot by appellant and unfortunately the bulletproof vest failed him that evening. Witnesses described seeing appellant and the victim walking in the 1600 block of Perkiomen Avenue engaged in a verbal argument. The witnesses described seeing Rene Castro walk away from appellant as he went on the porch of 1622 Perkiomen Avenue where his friend Omar Serrano lived. N.T., jury trial, 4/21/06, at 175, 214. As Rene Castro stood on the front porch of 1622 Perkiomen Avenue, the appellant pulled the gun from his pocket, pointed it at Rene Castro and fired several times. N.T. at 185. Appellant then fled from the scene. Eyewitnesses who viewed the incident from their house on the other side of the street described the shooting and testified that the victim did not have a gun in his hand prior to being shot by appellant.[6] However, after appel-

---

6. The Commonwealth presented the testimony of: Jarrod Hopgood, N.T. at 168-203; Robert Cairens, N.T. at 207-37; Crystal Talarico, N.T.

lant fled the scene, they noticed the victim holding a gun.

A few moments after appellant fled the scene, the victim collapsed in the vestibule of 1622 Perkiomen Avenue and died as a result of the gunshots inflicted by appellant. The autopsy confirmed that the victim died as a result of a gunshot which penetrated his left abdomen below the bulletproof vest and which penetrated his iliat vein.

At trial, appellant did not deny fatally shooting Rene Castro, but claimed he did so in self-defense. N.T. at 482. He claims he saw Rene Castro reaching for a gun, but admits that he shot Rene Castro before Rene Castro had a chance to pull out his gun. N.T. at 482-84. Although the jury acquitted appellant of first-degree murder, they rejected his claim of self-defense and convicted him of third-degree murder.

## DISCUSSION

The appellate courts have ruled that the trial court may not speculate or guess about the matters complained of in a 1925(b) statement. See *Commonwealth v. Lemon,* 804 A.2d 34, 36-37 (Pa. Super. 2002). The purpose of the concise statement is to aid the trial judge in identify-

---

at 239-63; Erica Nowotarski, N.T. at 265-80; and Eddie Schwambach, N.T. at 323-29, who witnessed the events unfold from 1621 Perkiomen Avenue directly across the street from where the shooting occurred. Additionally, Amy Smith, from her vantage point at 1606 Perkiomen Avenue, saw appellant and Rene Castro arguing on the street, heard gunshots and thereafter called 911. N.T. at 331-39. Pricilla Rodriguez, N.T. at 139-55, testified to the events as she witnessed them from the third floor of 1610 Perkiomen Avenue.

ing and focusing upon those issues which the appellant plans to raise upon appeal. *Commonwealth v. Lorde,* 553 Pa. 415, 419, 719 A.2d 306, 308 (1998). General or vague statements force the trial court to speculate or guess about the issues appellant plans to raise on appeal and make it difficult for the trial court to prepare a memorandum opinion addressing those issues. *In re Estate of Daubert,* 757 A.2d 962, 963 (Pa. Super. 2000).

The courts have, therefore, held a concise statement that is too general or too vague is the functional equivalent of no concise statement whatsoever in that such a concise statement results waiver of the issues for the purposes of appellate review. *Lemon,* 804 A.2d at 37.

Here, appellant's concise statement is too vague and too general for the court to consider or understand. Therefore, the court considers all of the issues waived. Nevertheless, the court will attempt to address whether the Commonwealth presented sufficient evidence to undermine the self-defense claim and support the jury's verdict.

## Sufficiency of the Evidence

The well-established standard of review applied to a sufficiency of the evidence claim is:

"[W]hether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. . . . [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may

be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." *Commonwealth v. Lambert,* 795 A.2d 1010, 1014 (Pa. Super. 2002). (internal citations omitted)

"This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. McFadden,* 850 A.2d 1290, 1293 (Pa. Super. 2004). If a jury believes a witness, then the appellate court is bound by that determination where it is not wholly unreasonable. *Commonwealth v. Baker,* 511 Pa. 1, 511 A.2d 777 (1986).

## Self-Defense

First, appellant asserts he acted in self-defense. When the defendant alleges a theory of self-defense under section 505 of the Pennsylvania Crimes Code, the Commonwealth bears the burden to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. *Commonwealth v. McClendon,* 874 A.2d

1223, 1229-30 (Pa. Super. 2005). The Commonwealth meets this burden if it establishes at least one of the following: "(1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety." *Id.* at 1230. (citations omitted) "If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue." *Commonwealth v. Burns,* 765 A.2d 1144, 1149 (Pa. Super. 2000). Furthermore, "[a]lthough the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a jury is not required to believe the testimony of the defendant who raises the claim." *Commonwealth v. Bullock,* 948 A.2d 818, 824 (Pa. Super. 2008). For example, it is long-standing precedent in Pennsylvania that jury may properly reject a defendant's self-defense claim even if the victim was holding or reaching for a weapon. See *Commonwealth v. Austin,* 906 A.2d 1213, 1223 (Pa. Super. 2006) (given that appellant did not wait for [the victim to brandish his weapon], a jury could possibly conclude that [the victim] had not yet fully demonstrated an intent to shoot appellant, making appellant's belief that he needed to shoot unreasonable); see also, *Commonwealth v. Natividad,* 595 Pa. 188, 938 A.2d 310 (2007); *Commonwealth v. Hammond,* 953 A.2d 544 (Pa. Super. 2008); *Commonwealth v. Jones,* 886 A.2d 689 (Pa. Super. 2005); *Commonwealth v. Baez,* 759 A.2d 936 (Pa. Super. 2000).

The eyewitnesses and appellant's testimony provided the jury with more than enough evidence to conclude beyond a reasonable doubt that appellant provoked and continued to use force against Rene Castro; appellant did not reasonably believe that he was in danger of death or serious bodily injury; and that appellant had a duty and the opportunity to safely retreat from Rene Castro.

Priscilla Rodriguez testified that she saw appellant and Rene Castro walking on Perkiomen Avenue when she heard appellant accuse Rene Castro of lying. N.T. at 145. She then saw appellant push Rene Castro real hard in the face. N.T. at 142-43, 148. Rene Castro did not defend himself after being pushed, but rather continued to walk away from appellant. N.T. at 146. She then overheard two other men tell appellant that the police were coming after him so he should leave. Appellant did not leave, but rather continued to follow Rene Castro. She saw Rene Castro throw up his hands indicating that he was finished with the conversation and then immediately thereafter watch appellant run up the porch steps towards Rene Castro. N.T. at 150-52. Although she could not see anything that took place on the porch, she heard multiple punches and three gunshots. N.T. at 152. Then, she watched appellant run towards Sixteenth Street. N.T. at 153.

Robert Cairens testified that, from his vantage point, he saw a bald Latino man follow Rene Castro down the street and up the steps of 1622 Perkiomen Avenue; hit Rene Castro three times; and then pull a gun from his waist and shoot Rene Castro at point blank range three times. N.T. at 213, 218-20. Robert Cairens did not see

Rene Castro hit appellant. Further, Robert Cairens did not see a gun or anything else in Rene Castro's hands when he was assaulted and shot by appellant. N.T. at 222.

Crystal Talarico observed the incident from the front porch of 1621 Perkiomen Avenue. N.T. at 239. She also saw the bald Latino man and Rene Castro arguing in the street. N.T. at 242. She then saw the bald Latino man's hand go up and out and heard three shots and saw multiple flashes. N.T. at 247-48. From her vantage point, directly across the street, she did not see a gun in the victim's hands before appellant shot him. N.T. at 246. She then saw appellant flee from the scene.

Erica Nowotarski also observed the incident from the front porch of 1621 Perkiomen Avenue. N.T. at 265. She saw appellant follow and yell very loudly at Rene Castro. N.T. at 269-70. She testified that Rene Castro walked away from the argument, and he appeared to not want anything to do with it. N.T. at 270. She then saw Rene Castro knock on the front door of 1622 Perkiomen Avenue directly across the street and make hand gestures indicating that he was going to enter the house. N.T. at 270-72. Thereafter, she watched appellant punch Rene Castro three times and then shoot Rene Castro three times. N.T. at 274, 277. She did not see Rene Castro fight back or draw his weapon on appellant. N.T. at 278.

The appellant testified on his own behalf at trial. Appellant admitted to shooting Rene Castro before Rene Castro pulled out his weapon. Appellant's testimony on direct examination highlights appellant's rash, unjustifiable shooting of Rene Castro:

"Defense counsel: And, what then happens?

"Appellant: That's when I noticed that [Rene Castro] was reaching for his gun.

"Defense counsel: Now when you say reaching for his gun, tell us what it was you saw him do.

"Appellant: I saw him reach inside of his coat.

"Defense counsel: So does he pull out a gun?

"Appellant: No. For some reason I don't let him.

"Defense counsel: Tell us what you see happen.

"Appellant: Well, while I see him reaching for the gun that's when I react. And I charged up at him.

"Defense counsel: All right. You run up on the porch and do what?

"Appellant: And I hit him in the head a few times.

"Defense counsel: And, what then happens?

"Appellant: He drops down to, like, about his knee. And then that's when he's, like, getting back up again. And he's reaching for his gun. And, I asked him, I said, are you pulling out your gun? Are you pulling out your gun and—

"Defense counsel: Does he get it?

"Appellant: No. For some reason he can't get it out. And that's when I took my pistol, and fired at him." N.T. at 482-84.

The Commonwealth met its burden to disprove appellant's claim of self-defense. First, appellant's belief that he was in danger of death or serious bodily injury is

unreasonable because the victim did not manifest his intent to use his concealed weapon because he did not remove it from his jacket before he was shot three times by appellant. Although Rene Castro carried a concealed gun and wore a bulletproof vest that night, the eyewitnesses' testimony clearly indicates that Rene Castro tried to retreat from appellant prior to the shooting and did not have a weapon in his hands until after he was shot by appellant, thereby proving that appellant did not reasonably believe that he was in danger of death or serious bodily injury. *McClendon,* 874 A.2d at 1230. Therefore, the appellant's belief that he must shoot first was premature, unreasonable and unjustified.

Second, the Commonwealth proved that appellant provoked or continued the use of force towards Rene Castro because appellant was the initial aggressor. Appellant testified that he left his house that evening with a gun in his coat pocket. N.T. at 476-77. Appellant began the confrontation with Rene Castro by calling him a liar. N.T. at 480. Appellant then pursued, pushed and punched him. Rene Castro did not retaliate, but instead walked away from appellant. Yet, appellant continued to pursue, until he shot Rene Castro three times at close range on the steps of 1622 Perkiomen Avenue. Therefore, the Commonwealth proved that appellant was the initial aggressor and that he continued to provoke and use force against Rene Castro. *McClendon,* 874 A.2d at 1230.

Last, appellant clearly had multiple opportunities to safely retreat from Rene Castro. For example, appellant could have retreated while he was on the open street of Perkiomen Avenue; when two unidentified men informed

him the police had been called and were on their way; when Rene Castro walked onto the porch of 1622 Perkiomen Avenue and indicated that he was going inside and wanted nothing more to do with the argument; or when Rene Castro was, according to appellant, unsuccessfully reaching for his gun. Clearly, retreat with complete safety was possible when appellant had access to the open street and he had every opportunity to simply walk away. *McClendon,* 874 A.2d at 1230. Instead, appellant chose to stand his ground and use deadly force towards Rene Castro.

This court finds that the Commonwealth established sufficient evidence to prove appellant did not act in justifiable self-defense because appellant did not reasonably believe he was in danger of death or serious bodily injury; appellant provoked and continued to use force against Rene Castro; and appellant did not retreat even though safe retreat was possible.

## Jury's Verdict

Appellant claims the evidence was insufficient to support his convictions. However, appellant has failed to argue why the evidence is insufficient. Still, the court will briefly analyze the facts of this case to determine whether the jury's verdict of guilty beyond a reasonable doubt of murder of the third degree,[7] aggravated assault,[8] firearms not to be carried without a license,[9] possession

---

7. 18 Pa.C.S. §2502(c).

8. 18 Pa.C.S. §§2702(a)(1), (a)(4).

9. 18 Pa.C.S. §6106(a)(1).

of instruments of crime[10] and possession of a weapon[11] were properly supported by the evidence.

## A. Murder in the Third Degree

"Third-degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Morris,* 958 A.2d 569, 576 (Pa. Super 2008) WL 4415656, quoting *Commonwealth v. Tielsch,* 934 A.2d 81, 94 (Pa. Super. 2007); see also, *Commonwealth v. Santos,* 583 Pa. 96, 102, 876 A.2d 360, 363 (2005). "Malice is not merely ill will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty." *Morris,* 958 A.2d 569, 576 (Pa. Super 2008) WL 4415656 quoting *Commonwealth v. Hardy,* 918 A.2d 766, 774 (Pa. Super. 2007).

The Commonwealth presented several witnesses who testified they saw appellant argue with Rene Castro in the middle of Perkiomen Avenue, follow him up the front steps of 1622 Perkiomen Avenue, punch him in the face and then shoot him with a gun three times at point blank range. Rene Castro did not fight back after being pushed or punched by the appellant and was not seen holding a gun until after the shooting. Clearly, by pursuing Rene Castro with escalating violence until he maliciously shot Rene Castro at point blank range three times indicates a wickedness of appellant's disposition and hardness of

10. 18 Pa.C.S. §907(a).
11. 18 Pa.C.S. §907(b).

appellant's heart sufficient to justify a conviction of third-degree murder.

## B. Aggravated Assault

The appellant was convicted of two counts of aggravated assault. To support a guilty verdict for aggravated assault under 18 Pa.C.S. §2702(a)(1), the Commonwealth must prove beyond a reasonable doubt that appellant attempted to cause serious bodily injury to another or caused such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S. §2702(a)(1). Serious bodily injury is defined as bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. 18 Pa.C.S. §2301.

To summarize the facts briefly, appellant pushed Rene Castro very hard in the face, punched him several times and then shot him three times. Clearly, appellant's treatment of Rene Castro proved his intention to cause serious bodily injury to the victim and demonstrates extreme indifference to the value of Rene Castro's life.

## C. Firearms Not To Be Carried Without a License

In order to prove appellant is guilty of carrying a firearm without a license, under 18 Pa.C.S. §6106(a)(1), the Commonwealth must establish that appellant carried a firearm either in a vehicle or concealed on or about his person; that the firearm was in operating condition; that appellant was not in his home or place

of business; and that appellant did not have a license to carry a firearm.

At trial, appellant admitted that he did not have a license to carry a firearm. N.T. at 496. Furthermore, appellant admitted that he carried a firearm on his person that evening. N.T. at 484. Therefore, the Commonwealth established appellant's guilt to this charge because the aforementioned testimony was sufficient to enable the jury to find appellant guilty of carrying a firearm without a license.

### D. Possession of Instruments of Crime and Possession of a Weapon

Appellant was convicted of possession of instruments of crime and possession of a weapon. To be convicted of possession of instruments of crime, under 18 Pa.C.S. §907(a), a person must possess any instrument of crime with intent to employ it criminally. Likewise, under 18 Pa.C.S. §907(b), a person is guilty of possession of a weapon if he or she possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

Here, appellant admitted carrying a weapon inside his coat pocket. N.T. at 513. He also admitted to pointing and firing his gun at Rene Castro. N.T. at 512. Additionally, four witnesses testified to seeing appellant or a man meeting appellant's description pointing and firing a gun at the victim on the steps of 1622 Perkiomen Avenue. Therefore, the jury could reasonably find that on the night of the shooting, appellant possessed a gun with the intent to engage in the shooting of the victim.

After careful review of the entire record and considering the relevant facts and law, this court finds that in light of appellant's testimony, the testimony from several witnesses and other circumstantial evidence, the Commonwealth proved every element of each of the convictions beyond a reasonable doubt. Therefore, this court requests that appellant's allegations of error be denied.

## CONCLUSION

For all the above reasons, the court respectfully requests that the defendant's appeal be denied and his sentence affirmed.