J-S09032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY SCOTT POWELL | : | |
| | : | |
| Appellant | : | No. 1006 MDA 2017 |

Appeal from the Judgment of Sentence June 13, 2017
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0000050-2017

BEFORE: GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MARCH 06, 2018**

Appellant, Jeffrey Scott Powell, appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas, following his jury trial conviction of simple assault and court conviction of two counts of harassment.[1] We affirm.

In its opinion, the trial court correctly set forth the facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises the following issue for our review:

> WAS THERE INSUFFICIENT EVIDENCE TO PROVE BEYOND
> A REASONABLE DOUBT THAT [APPELLANT]'S USE OF

_____

[1] 18 Pa.C.S.A. §§ 2701, 2709, respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

FORCE WAS NOT JUSTIFIED PURSUANT TO SECTION 505
OF THE CRIMES CODE?

(Appellant's Brief at 6).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jessica E. Brewbaker, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed August 3, 2017, at 1-7) (finding: jury found testimony of Victim and Ms. Easy more credible than Appellant's testimony; jury dismissed Appellant's claim of self-defense, likely in light of testimony that Appellant was initial attacker; no evidence contradicted jury's determination). Accordingly, we affirm based on the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/06/2018

COMMONWEALTH          :   IN THE COURT OF COMMON PLEAS OF
                               :   CUMBERLAND COUNTY, PENNSYLVANIA

                             : 
         VS.                    :   CP-21-CR-0050-2017
                             : 
                             : 

JEFFREY SCOTT POWELL     : 

### IN RE: OPINION PURSUANT TO PA. R.A.P. 1925

BREWBAKER, J., August 3, 2017

      Appellant Jeffrey Scott Powell raises a single issue in his appeal, alleging that the Commonwealth failed to disprove beyond a reasonable doubt that his use of force was justified pursuant to Section 505 of the Pennsylvania Crimes Code. For the reasons that follow, the Court respectfully suggests that the jury's verdict should be upheld.

### Procedural History

      Appellant Jeffrey Scott Powell was tried on May 1-2, 2017 by a jury of his peers on a charge of simple assault, a misdemeanor of the second degree. Following that trial, the jury found him guilty of simple assault, and the Court found him guilty of two summary counts of harassment. Appellant was sentenced on June 13, 2017 to time-served (one day) to fifteen months on the simple assault, as well as fines and costs for all charges. He timely filed an appeal on June 22, 2017, and pursuant to this Court's Order of that same date, timely filed his Concise Statement on July 13, 2017.



## Statement of Facts

In November of 2016, Appellant was living with his wife, Ashanee Easy and her four children.[1] Ms. Easy and Appellant had been together for about four years, but married for almost three. Ms. Easy's son Murice, one of the children living in the home, was seventeen years old, around 5'8" tall, and weighed about 140 pounds.[2] Ms. Easy's and Murice's trial testimony were very similar, and are summarized below.

On November 2, 2016, Murice was upstairs helping with his younger siblings.[3] He and his mother, Ms. Easy, were keeping watch for the Defendant's impending arrival from work as Appellant did not approve of Murice spending time with the younger children.[4] Since Murice had revealed his homosexuality approximately a year prior, Appellant had not wanted him around his younger siblings.[5] Furthermore, Appellant constantly insulted Murice for being gay, calling him "faggot," "gay ass," "queer," and "homo."[6]

When Appellant arrived home from work on November 2, 2016, his three-month old baby was crying, and Ms. Easy was busy cooking.[7] When Ms. Easy asked Appellant to pick the baby up, he told her to give him a minute because "I fucking just got through the door."[8] Ms. Easy then asked Murice to come help with the baby, but when Appellant saw Murice holding the baby, he told Murice to give the baby to him.[9] Ms. Easy had previously heard Appellant tell Murice not to touch the younger kids, because "he doesn't want a faggot touching his kids, or

---

[1] Notes of Testimony (hereinafter "N.T."), pages 22-23.
[2] N.T. pg. 24.
[3] N.T. pg. 25.
[4] N.T. pg. 26.
[5] N.T. pg. 55.
[6] N.T. pg. 56.
[7] N.T. pg. 27.
[8] Id.
[9] N.T. pgs. 27-28, 57.

2

they are going to be gay."[10] Ms. Easy, who could see and hear Appellant from her vantage point, heard Appellant telling Murice to hand over the baby, and ran over to them.[11] Murice carefully went to hand the baby to Appellant, and Appellant yelled "you almost dropped the fucking baby."[12] Murice denied that and walked away.[13] Ms. Easy intervened in support of Murice, telling Appellant that Murice did not almost drop the baby, and that he needed to leave him alone.[14]

Appellant yelled at Murice again about almost dropping the baby, and Murice told him he was sick and tired of the defendant talking like that to him all of the time.[15] Appellant proceeded to put his face very close to Murice's face and threated that he would punch him in the face if he dropped the baby again.[16] Murice calmly told Appellant that he was tired of being talked to in that manner.[17]

Appellant slid the baby into her swing, and walked back to Murice, grabbed him by his shirt, shook him violently and then punched him in his right cheek with his closed fist.[18] Murice told Appellant to let him go, and Ms. Easy jumped in and tried to pull Appellant off of Murice.[19] The three of them continued scuffling around until Appellant grabbed Ms. Easy and began to choke her.[20] Not being strong enough to get Appellant off of his mother, Murice grabbed his tablet and began recording a video of the incident.[21]

---

[10] Id.
[11] N.T. pg. 28.
[12] N.T. pgs. 30, 58.
[13] N.T. pg. 58.
[14] N.T. pg. 30.
[15] N.T. pgs. 30-31, 59.
[16] N.T. pg. 59.
[17] N.T. pg. 60.
[18] N.T. pgs. 32-33, 60-62.
[19] N.T. pgs. 33, 63.
[20] N.T. pgs. 35-36, 65.
[21] N.T. pgs.36, 65.

When Appellant saw Murice with the tablet, he slapped it out of his hand and attacked him again.[22] Ms. Easy again started hitting Appellant in an attempt to get him off of Murice, even punching Appellant in the nose and causing it to bleed.[23] Ms. Easy's fifteen-year-old son then jumped in so that he and Murice were also punching Appellant, who would not let go of Murice's shirt until it finally ripped.[24] Appellant then told the family, "I am going to call the fucking cops on you guys, you know. You guys are black. You definitely are going to jail. You guys are black. I am white. You know, if I call the cops, you guys are going to jail. You are going to lose your kids...."[25] Appellant did call the police, after which he changed his mind and called back to cancel, but two officers from Lower Allen Township Police Department arrived soon thereafter.[26]

When the police arrived, Ms. Easy immediately told them that Appellant had hit Murice because Murice was homosexual and Appellant did not want him holding the baby.[27][28] Officer Jeremy Read spoke separately to Appellant, who told him that Murice was not his biological child, and that Murice had dropped the baby who was his biological child.[29] Appellant said he caught the baby, after Murice dropped her, but then Murice "came at him," at which time

---

[22] N.T. pgs. 37, 67.

[23] N.T. pgs. 37-38, 67.

[24] Id.

[25] N.T. pgs. 38-39, 68.

[26] N.T. pg. 39.

[27] Although Ms. Easy also testified that Appellant had assaulted Murice because he was homosexual, she did not write anything about his sexual preference at the cause of Appellant's ire in her written statement to the police. Similarly, at the preliminary hearing on this case, Ms. Easy testified that Appellant attacked Murice after accusing him of dropping the baby, and not because he was gay. Murice's written statement and preliminary hearing testimony similarly omitted any mention that Appellant had attacked him due to his homosexuality, rather indicating that the altercation began after Appellant accused Murice of dropping the baby. N.T. pgs. 41-44, 46, 76-77.

[28] N.T. pg. 81.

[29] N.T. pg. 82.

4

Appellant punched Murice in the face in self-defense.[30] Appellant also told Officer Read that after he punched Murice in self-defense, the rest of the family "rushed" him and began hitting him.[31]

During Officer Read's questioning of Appellant, Officer Katie Justh spoke to the other members of the family, who showed her the video Murice had recorded and his torn shirt.[32] Murice complained of a sore jaw and Ms. Easy noted a sore hand; additionally, Appellant defendant had a bloody nose, though Officer Read believed he was exaggerating his injury, continuously dabbing at it unnecessarily.[33] The police officers then arrested Appellant.[34]

Appellant, who is 5'11" and approximately 200 pounds, testified in his own defense.[35] After finishing work at the Post Office around 6:00 p.m. on November 2, 2016, he arrived home soon thereafter.[36] When he came out of the shower he saw Murice holding the baby, and went to get the baby from Murice.[37] He said that the baby slipped, and he grabbed her, and then verbally reprimanded Murice for dropping the baby.[38] As he was yelling at Murice, Ms. Easy and Murice both "charged" him, at which time he "gingerly struck" Murice in the face.[39] Then Ms. Easy, Murice, and Ms. Easy's other son all "gang-punched" Appellant, with Ms. Easy hitting him "at least twenty times in the nose in the exact same spot," while the boys were kicking and punching him.[40] Appellant further testified that he never choked Ms. Easy or put his arm around her neck, and that he never said they would get arrested because they were black and he was white, stating

---

[30] Id.
[31] Id.
[32] N.T. pgs. 83, 88.
[33] N.T. pgs. 83-85.
[34] N.T. pg. 83.
[35] N.T. pg. 108.
[36] N.T. pg. 94.
[37] N.T. pgs. 95-96.
[38] N.T. pg. 96.
[39] N.T. pg. 97, 107.
[40] N.T. pgs. 97-98.

5

"I love my black wife. I love my two black step-children."[41] Appellant produced pictures of some bruising on his bicep, leg and foot.[42] Appellant also testified that he does not dislike Murice, had no problem with him being gay, and bought him a Lexus for his seventeenth birthday.[43] In rebuttal, Ms. Easy testified that due to a diagnosis of juvenile diabetes Murice did not have a driver's license, and that Appellant had actually bought the Lexus for himself.[44]

## Analysis

According to the Pennsylvania Crimes Code, "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). Because the defendant properly raised his claim of self-defense, the burden was on the Commonwealth to prove beyond a reasonable doubt that the defendant's actions were not justifiable self-defense. *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citing *Commonwealth v. McClendon*, 874 A.2d 1223, 1229–30 (Pa. Super. 2005)). Furthermore, the Commonwealth satisfies this burden by establishing at least one of the following factors: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety. *Smith*, at 787 (citing *Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009)).

---

[41] N.T. pgs. 99, 101.
[42] N.T. pgs. 101-103.
[43] N.T. pgs. 104, 106.
[44] N.T. pgs. 114-115.

6

In *Commonwealth v. Torres*, the Supreme Court held that the Commonwealth had not met its burden of disproving the defendant's self-defense claim where the only evidence regarding the assault was the defendant's testimony. 766 A.2d 342, 345 (Pa. 2001). Although the police officer testified regarding the victim's statements, the victim had not addressed who was the initial aggressor, and thus the defendant's version remained uncontested. *Id.*

Contrary to *Torres*, the instant case involved the testimony of several eyewitnesses, and thus became an issue of credibility for the jury. It is well established that the jury "is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (quoting *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015)). Furthermore, "[a]lthough the Commonwealth is required to disprove a claim of self-defense ... a jury is not required to believe the testimony of the defendant who raises the claim." *Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011) (quoting *Commonwealth v. Carbone*, 574 A.2d 584, 589 (Pa. 1990)).

The jury clearly found the testimony of Murice and his mother to be more credible than that of the defendant, as they dismissed his claim of self-defense, likely due to the testimony that he was the initial attacker. There is absolutely no evidence that this was an improper determination or outside the province of the jury, and thus the jury's decision should be upheld. This Court respectfully requests that Appellant's appeal be denied.

August 3 , 2017

Jessica E. Brewbaker, J.

Charles Volkert, Jr., Esquire
Chief Deputy District Attorney

Joshua Yohe, Esquire
Assistant Public Defender

:rlm

7     Copies delivered on AUG 0 3 2017