J-S02007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS BROWN | : | |
| | : | |
| Appellant | : | No. 243 EDA 2017 |

Appeal from the Judgment of Sentence January 3, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004513-2015

BEFORE:  BOWES, J., NICHOLS, J., and RANSOM, J.*

MEMORANDUM BY BOWES, J.:                    **FILED MAY 21, 2018**

Marcus Brown appeals from the judgment of sentence of life imprisonment imposed following his conviction of first-degree murder and related firearms charges.  We affirm.

The trial court set forth the relevant facts underlying this appeal as follows:

> On September 20, 2014, the Twisters Motorcycle Club hosted its annual anniversary ceremony at the Nifiji Event Hall at 1432 Chew Street in northern Philadelphia.  Between 500 and 1,000 people affiliated with several Philadelphia motorcycle clubs attended the event, including the decedent, Desmond "Little G" Davis, a member of the Twisters, [Appellant], Marcus "Taz" Brown, a member of the rival Byrd Riders Motorcycle Club, and his co-defendant, Stanley "Stizz" Newell, another Byrd Rider.
>
> At approximately midnight on September 21, 2014, an argument between "Gun," the chapter president of the Byrd Riders, and the decedent commenced outside the event hall on Chew Street, drawing the attention of [Appellant] and Newell. As the argument continued, . . . Newell approached the decedent

* Retired Senior Judge Assigned to the Superior Court.

and argued with him about a gun. During this argument, [Appellant] approached the decedent from behind, drew a Colt .45 caliber pistol, and pointed it at his face.

Approximately ten feet away from [Appellant] and decedent, Michael "Country" Baker, a member of the Twisters, drew his pistol, raised it above his head, and fired one shot. The gunfire caused the crowd of over seventy-five attendees standing outside the event hall to panic and scatter. Several armed attendees drew their weapons and proceeded to fire at each other. The decedent . . . ran down Chew Street, turned on Park Avenue, and ran away from the Event Hall. [Appellant] gave chase, followed the decedent onto Park Avenue, aimed his weapon toward the decedent's back, and fired at least four shots, killing him.

Deputy Chief Medical Examiner Dr. Albert Chu, an expert in forensic pathology, reviewed [the decedent's] autopsy report and testified that [he] suffered four gunshot wounds, including non-fatal, penetrating wounds to his left shoulder and left buttock, and fatal, penetrating wounds to his lower back and right buttock. The projectiles causing the decedent's lower back and right buttock wounds travelled through several vital organs, including the heart, small intestine, and liver. The decedent suffered additional abrasions to his right hip, face, elbow, and left knee, consistent with terminal collapse injury. To a reasonable degree of medical certainty, Dr. Chu concluded that the cause of death was homicide.

Officers of the Philadelphia police crime scene unit investigated the area surrounding the Nifiji Event Center and recovered twenty-five fired cartridge casings (FCCs), including nine .45 caliber FCCs, seven projectiles or fragments, and four handguns, including a .45 caliber Springfield XDS pistol. Of the nine .45 caliber FCCs discovered at the crime scene, five matched the recovered Springfield XDS pistol. The four remaining .45 caliber FCCs matched each other but did not match the recovered Springfield, and instead were fired from an unidentified pistol. The four .45 caliber FCCs matching the unidentified pistol were recovered from the intersection of Chew Street and Park Avenue, approximately one-quarter of a block from where the decedent's body was discovered.

Officer Ronald Weitman, an expert in firearms and ballistics, reviewed all of the ballistics evidence recovered from the crime scene and the decedent's body. Officer Weitman examined four projectiles recovered from the decedent and determined that they were .45 caliber. After comparing the projectiles, Officer Weitman concluded that they were fired from the same firearm, but that they were not fired from the Springfield XDS recovered from the crime scene.

In the aftermath of the shooting, Philadelphia Police interviewed Tyrell Ginyard, a member of the Twisters motorcycle club present at the shooting. Ginyard told police and later testified that he was approximately a foot away from the decedent . . . when [Appellant] drew his .45 caliber pistol and pointed it at the decedent's head. [Mr.] Ginyard further observed [Appellant] chase [Mr. Ginyard] and the decedent around the corner of Chew Street and Park Avenue, after which [the decedent] was struck by gunfire and collapsed on the sidewalk.

Police further interviewed Rodney Gregory, a Byrd Rider, who told police and later testified that he observed [Appellant] brandish a gun the night of the murder. Gregory identified both [Appellant] and his co-defendant[, Newell,] via photo array, and when shown surveillance video of the incident, Gregory identified [Appellant] as holding a pistol in his right hand.

Detective Frank Mullen, an expert in video recovery, obtained video surveillance footage from three angles at the Nifiji Event Hall and a private residence at 5626 Park Avenue. Video recovered from the Nifiji Event Hall showed [Appellant] point a gun at the decedent['s] head just under the building's awning on Chew Street. A different camera angle from this location showed the decedent . . . attempt to escape the chaos outside the event hall by running down Chew Street and turning onto Park Avenue. That same camera showed [Appellant] fire at the decedent.

Trial Court Opinion, 3/16/17, at 2-5 (citations, footnote, and some capitalization omitted).

Appellant and Newell were arrested and charged with murder and related firearms offenses. On November 15, 2016, a jury rejected Appellant's claim of self-defense, and convicted him of first-degree murder and related firearms offenses.[1] On January 3, 2017, the trial court sentenced Appellant to life in prison without the possibility of parole on the murder charge, and a concurrent aggregate sentence of two to four years on the firearms violations. The trial court denied Appellant's post-sentence motion raising challenges to the weight and sufficiency of the evidence. Appellant filed a timely notice of appeal, and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a Pa.R.A.P. 1925(a) opinion. This matter is now ready for our review.

Appellant raises the following claims:

A. Was the evidence presented insufficient to sustain a verdict of first[-]degree murder?

B. Was the weight of the evidence presented insufficient to support the Appellant's conviction?

Appellant's brief at 6 (capitalization omitted).

In his first claim, Appellant challenges the sufficiency of the evidence supporting his conviction of first-degree murder. Our scope and standard of review of a sufficiency claim is well-settled:

_____

[1] The charges against Appellant and Newell were consolidated for trial. The jury found Newell guilty of third-degree murder in Baker's shooting death.

[O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa.Super. 2013) (citations and quotation marks omitted).

In order to sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a person was unlawfully killed; (2) the accused is responsible for the killing; and (3) the accused acted with malice and specific intent to kill. *See Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015); 18 Pa.C.S. § 2502(a). Under the Crimes Code, murder in the first degree requires an "intentional killing," which is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). The use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill. *See Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa.Super. 2016).

When, as in this case, the defendant has raised a claim of self-defense, "[t]he use of force upon or toward another person is justifiable

when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505. If the defendant properly raises self-defense under section 505, the Commonwealth must prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. *See Commonwealth v. McClendon*, 874 A.2d 1223, 1229-30 (Pa.Super. 2005). The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. *Id*. at 1230.

Appellant maintains that evidence presented by the Commonwealth demonstrated that as many as eight guns were involved in the incident, members of both the Twisters and Byrd Riders were firing weapons at the time of the shooting, and a number of people were shooting in the decedent's direction. Appellant highlights that the evidence established that the decedent was shot by two different people, as the projectiles discovered in his body consisted of both .45 caliber and .38/.357 caliber bullet fragments. Appellant claims that there is no physical evidence linking him to the shooting, nor any evidence that he owned a .45 caliber gun. Appellant's brief at 14-15.

Appellant argues that Mr. Ginyard is the only individual who testified that Appellant had a .45 caliber weapon and shot at the decedent, and posits that Mr. Ginyard's testimony should be discredited on the basis that, in his initial statement to police, he did not identify Appellant as one of the shooters at the scene. Appellant further contends that that this omission establishes that he acted in self-defense. According to Appellant, a video presented at trial is consistent with his claim that he shot his weapon in response to fear of imminent danger of death or serious bodily injury caused by the decedent firing his weapon. Appellant's brief at 15.

The trial court rejected Appellant's sufficiency claim, and explained its determination as follows:

> Video surveillance footage recovered from the Nifiji Event Hall showed [Appellant] draw a .45 caliber pistol and point it at the decedent's head immediately prior to the shooting. Additional footage recovered from the Nifiji Event Hall showed [Appellant] fire his weapon down Park Street towards the decedent. [Mr.] Ginyard testified that that he and [the decedent] ran down Chew Street and turned onto Park Avenue as [Appellant] gave chase. After running halfway down the city block, [Mr.] Ginyard watched [the decedent] collapse after being struck with gunfire. Dr. Chu testified that the decedent was struck in the back with four bullets, two of which traveled through his vital organs.
>
> . . . .
>
> Although it is undisputed that multiple parties discharged their weapons on the night of the murder, forensic evidence and [Mr.] Ginyard's testimony sufficiently disproved [Appellant's] self-defense argument. Dr. Chu's uncontroverted testimony showed that the decedent . . . suffered four wounds to his back caused by .45 cal[iber] projectiles. [Mr.] Ginyard testified that [Appellant] carried a .45 cal[iber] pistol and pointed it at the

- 7 -

decedent. Video evidence showed [Appellant] fire at the decedent as he ran away. [Mr.] Ginyard recounted how he attempted to flee the shooting with the decedent, only to watch him collapse after having been struck in the back during his escape. Nothing on the record indicated that the decedent fired a weapon or otherwise attacked [Appellant]. The evidence is sufficient to disprove [Appellant's] self-defense claim, as the Commonwealth has shown, beyond a reasonable doubt, that [Appellant] could not reasonably believe he was in danger of death or serious bodily injury, and that he continued to use force as the decedent attempted to flee.

Trial Court Opinion, 3/16/17, at 6-7 (citations to record omitted).

Based on the evidence of record, the jury could reasonably infer that Appellant chased the decedent as he was fleeing, and fired the shots which killed him. As noted above, the use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill. **Tucker**, **supra**. Once the issue of self-defense had been raised by Appellant, the Commonwealth sustained its burden of proof by demonstrating beyond a reasonable doubt that Appellant did not reasonably believe that he was in danger of death or serious bodily injury, since he fired the fatal shots as the decedent was fleeing from him. Thus, Appellant is not entitled to relief on his first claim.

In his second claim, Appellant contends that the verdict depended primarily on Mr. Ginyard's trial testimony, which was inconsistent with his initial statement to police. Appellant claims that the physical evidence contradicts Mr. Ginyard's testimony, because the video recovered from the scene does not show what caliber weapon Appellant was holding, or that he

discharged it. Appellant posits that Mr. Ginyard's testimony should be discredited because he provided false information on gun applications, and was on probation for fraud at the time of trial. On this basis, Appellant claims that the jury had no basis for rendering a guilty verdict on the murder charge other than Mr. Ginyard's inherently unreliable testimony.

Our standard of review of a challenge to the weight of the evidence is well-settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

As noted above, we assess only the trial court's exercise of discretion in evaluating whether the jury's decision to give more weight to certain facts constitutes a denial of justice. Here, the trial court determined there were no grounds to disturb the jury's credibility findings or reweigh the evidence after examining all of the evidence, stating:

> [Appellant's] argument ignores the substantial video evidence showing [Appellant] brandishing a weapon prior to the shooting, threatening the decedent with his weapon, and firing

the weapon towards the decedent. Eyewitnesses [Mr.] Ginyard and Gregory identified [Appellant] as the shooter on the video surveillance tape, while [Mr.] Ginyard testified that he stood one foot away from the decedent when [Appellant] pointed a gun at his face. Although trial counsel impeached [Mr.] Ginyard with evidence of his prior *crimen falsi* convictions for fraud and providing false information to obtain a firearm, the jury was free to consider those convictions during their deliberations and found [Appellant] guilty nonetheless.

Trial Court Opinion, 3/16/17, at 9-10 (citations to record omitted).

Additionally, our review discloses that Mr. Ginyard was subject to extensive cross-examination before the jury regarding his failure to identify Appellant in his initial statement, and that he presented an explanation for the inconsistency.[2] **See** N.T. Trial, 11/9/16, at 35-84. The jury had a full opportunity to observe Mr. Ginyard and to assess the credibility of his explanation. After reviewing all the evidence, the jury found that the credible evidence identified Appellant as the shooter. As such, we conclude the trial court properly exercised its discretion in finding the jury's verdict was not so contrary to the evidence as to shock the conscience.

Judgment of sentence affirmed.

---

[2] Our review discloses that Mr. Ginyard testified that he spent approximately thirty-six hours at the police station following the incident. During that time, he gave two statements to police. After providing his first statement, Mr. Ginyard was shown surveillance video from an area near the shooting. After viewing the videotape, Mr. Ginyard provided his second statement to police, wherein he identified Appellant as an individual in the video holding a gun, and stated that Appellant shot at the decedent. **See** N.T. Trial, 11/9/16, at 35-84.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/18