J-S03019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAZON WYKIE TURNER | : | |
| | : | |
| Appellant | : | No. 60 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 9, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0000405-2021

BEFORE: OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 14, 2024**

Appellant Dazon Wykie Turner appeals from the judgment of sentence imposed after a jury convicted him of one count of voluntary manslaughter and two counts of aggravated assault.[1]  Appellant raises challenges to the sufficiency of the evidence, the weight of the evidence, and the discretionary aspects of sentence.  We affirm Appellant's convictions, vacate the restitution component of the sentence, and remand for resentencing.

The trial court summarized the facts of this case as follows:

On October 4, 2020, Wilkes-Barre City police responded to a domestic call at 46 Darling Street, in Wilkes-Barre City.  Officer Oswalt and Officer Morris of the Wilkes-Barre City Police Department arrived at that residence and made contact with Jamielynn Giraldo [(Jamielynn)] and . . . Appellant.  Neither party had any visible injuries and Jamielynn [] told the officers that she was waiting for her father who was on his way to pick her up from

---

[1] 18 Pa.C.S. §§ 2503(a)(1) and 2702(a)(1), respectively.

that residence. The parties did not ask police for additional help so the officers left.

A short time later, in the early morning hours of October 5, 2020, police returned to the area in response to a shots fired call. Arriving at the location police observed two females, later identified as Jamielynn [] and Liliana Giraldo [(Liliana)] lying on the ground wounded by gunfire. A male, identified as Carlos Taffanelly [(Taffanelly)], was also laying on the ground unresponsive with a gunshot wound to his head.

At trial evidence was presented which indicated that a threatening verbal altercation developed between [] Appellant and Jamielynn's parents, [] Taffanelly and Liliana [], outside [] Appellant's residence on Darling Street. [] Taffanelly threatened [] Appellant and Liliana [] was armed with a tool. This altercation ended when Jamielynn [], Liliana [] and [] Taffanelly left Darling Street in the car driven by [] Taffanelly. [] Appellant got in his vehicle also and at one point both vehicles were on River Street driving in different directions. Then [] Appellant made a U-Turn and began to follow the victims' car. [] Appellant parked on North Street at its intersection with River Street while Mr. [Taffanelly's] car was parked at a traffic light. [] Appellant exited his vehicle and began shouting a challenge to Mr. [Taffanelly] who then accelerated his vehicle toward [] Appellant who was standing on the sidewalk. His vehicle hit the curb and he exited the vehicle armed with a pipe and ran toward [] Appellant. [] Appellant ran to his vehicle and retrieved a firearm. He then shot Mr. [Taffanelly]. Jamielynn and Liliana [] also ran toward [] Appellant and they too were shot by him. [] Appellant then fled the scene in his vehicle. [] Taffanelly was pronounced dead. Jamielynn and Liliana [] were treated for their injuries and each received significant medical treatment.

[] Appellant was arrested and charged with murder of the first degree [and] murder of the third degree for killing [] Taffanelly and two (2) counts of attempted homicide and two (2) counts of aggravated assault for shooting and injuring Liliana [] and Jamielynn [].

The case proceeded to trial by jury and after several days of testimony the jury acquitted [] Appellant of murder in the first and third degree and both counts of attempted homicide. He was convicted of voluntary manslaughter for the killing of [] Taffanelly and two counts of aggravated assault for shooting Liliana and Jamielynn [].

Trial Ct. Op., 5/19/23, at 1-3 (citations omitted).

On November 9, 2022, the trial court sentenced Appellant to consecutive terms of six and one-half to thirteen years' incarceration for voluntary manslaughter, six and one-half to thirteen years' incarceration for aggravated assault with respect to Liliana, and seven to fourteen years' incarceration for aggravated assault with respect to Jamielynn. The trial court's aggregate sentence is twenty to forty years' incarceration. The trial court also ordered Appellant to pay $9,000 in restitution to Jamielynn Giraldo for the costs of Taffanelly's funeral.[2]

Appellant filed a timely post-sentence motion seeking reconsideration of sentence and challenging the weight of the evidence. The trial court denied that motion on December 20, 2022.

_____

[2] At the sentencing hearing, the trial court also stated that it was ordering Appellant "to pay restitution" in the amount of $1,976 to the Pennsylvania State Police for various forensic testing and $2,600 to the Luzerne County Coroner's Office. **See** N.T. Sentencing, 11/9/22, at 51-52. However, in its sentencing order, the trial court imposed these amounts as court costs. **See** Sentencing Order, 405-2021, 11/9/22. The only restitution in the written sentencing order is the $9,000 to be paid to Taffanelly's family for funeral costs. **See id.**

In general, where there is a discrepancy between the written sentencing order and the statements at the sentencing hearing, it is the text of the sentencing order that controls. **See Commonwealth v. Kremer**, 206 A.3d 543, 548 (Pa. Super. 2019). Therefore, the only restitution imposed as part of Appellant's sentence is the $9,000 for funeral costs. **See id.**; **see also** Sentencing Order, 405-2021, 11/9/22.

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises six issues on appeal:

1. Was the evidence insufficient evidence to prove voluntary manslaughter, aggravated assault — Liliana Giraldo, and aggravated assault — Jamielynn Giraldo, because the Commonwealth did not disprove justification or self-defense?

2. Was the evidence insufficient evidence to prove aggravated assault — Jamielynn Giraldo, regarding the required mental state of [Appellant] and proof of serious bodily injury?

3. Did the [trial] court err[] by the admission of photographs or images that were cumulative, inflammatory in nature, and unduly prejudicial to [Appellant]?

4. Did the [trial] court abuse its discretion in denying [Appellant's] post-sentence motion seeking a new trial because the verdict was against the weight of the evidence?

5. Did the [trial] court abuse its discretion in imposing an aggregate sentence of not less than twenty (20) years to not more than forty (40) years of incarceration?

6. Did the [trial] court abuse its discretion in ordering the restitution requested by the Commonwealth without sufficient supporting evidence?

Appellant's Brief at 6 (some formatting altered).[3]

_____

[3] We note that the Appellant did not include any argument in his brief in support of the third claim he raised in his statement of issues, *i.e.*, the trial court erred in admitting photographs or images that were cumulative, inflammatory in nature, and unduly prejudicial. *See* Appellant's Brief at 6. Accordingly, Appellant has waived this issue. *See Commonwealth v. Felder,* 247 A.3d 14, 20 (Pa. Super. 2021) (stating that "an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted and formatting altered)).

## Sufficiency of the Evidence: Self-Defense

In his first issue, Appellant argues the evidence was insufficient to sustain his convictions of voluntary manslaughter and aggravated assault with respect to Lillianna because he had presented a defense of justification. Appellant's Brief at 28-34. Specifically, Appellant contends it was undisputed that Taffanelly and Liliana confronted him while yelling and brandishing weapons, *i.e.*, metal pipes or bars. *Id.* at 30-31. Appellant further asserts that after the original confrontation ended without violence, Taffanelly drove his vehicle directly towards Appellant, then missed and struck the curb. *Id.* at 31. Appellant claims that Taffanelly and Liliana then exited their vehicles and pursued Appellant. *Id.* Appellant argues that he reasonably believed that he was in danger, and therefore he acted in self-defense when he shot Taffanelly and Liliana. *Id.* at 31-32. Appellant also asserts that he satisfied the duty to retreat, but Taffanelly and Liliana pursued him. *Id.* at 34.

Appellant further contends that Lawrence Kansky and Liliana presented inconsistent testimony about the number of shots that Appellant fired. *Id.* at 32. Further, Appellant suggests that bullets he fired went through Taffanelly's body and struck Liliana who was behind him. *Id.* at 32-33.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most

favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

Challenges to reliability of evidence go to the weight of the evidence, not sufficiency. *See, e.g*., *Commonwealth v. Barkman*, 295 A.3d 721, 733 (Pa. Super. 2023) (noting that unlike weight claim, "a sufficiency claim must accept the credibility and reliability of all evidence that supports the verdict" (citation omitted)). Indeed, the "[e]xistence of inconsistencies in the testimony of a witness does not alone render evidence insufficient to support a verdict." *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (citations omitted); *see also Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018) (reiterating that "[v]ariances in testimony . . . go to the credibility of the witnesses and not the sufficiency of the evidence" (citation omitted)).

Under the Crimes Code, self-defense is a defense of justification, which is a complete defense to criminal liability. *See* 18 Pa.C.S. §§ 502, 505. We have explained that

> [t]he use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. *See* 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt.

*Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa. Super. 2008) (citation omitted).

To disprove a defendant's claim of self-defense, the Commonwealth must establish at least one of the following beyond a reasonable doubt:

> 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety. It remains the province of the [fact-finder] to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat.

*Commonwealth v. McClendon*, 874 A.2d 1223, 1230 (Pa. Super. 2005) (citations and quotation marks omitted).

"To claim self-defense, the defendant must be free from fault in provoking **or escalating** the altercation that led to the offense, before the defendant can be excused from using deadly force." *Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014) (citation omitted and emphasis in original). "The complainant can serve as a witness to the incident to refute a self-defense claim. Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a fact-finder is not required to believe the testimony of the defendant who raises the claim." *Id.* (citations omitted and formatting altered).

Here, the trial court explained:

At trial [] Appellant raised a claim of self-defense when he testified that he intentionally shot Carlos Taffanelly, Liliana Giraldo, Jamielynn Giraldo. He testified that he shot at each of them in turn because he believed that they were going to attack him. It was undisputed that Carlos Taffanelly drove his vehicle toward the sidewalk where [] Appellant was standing while he shouted challenging him to fight. He indicated that he saw Carlos Taffanelly and Liliana Giraldo were both holding club type weapons as they pursued him. He ran from Carlos Taffanelly toward his own vehicle where he recovered a firearm concealed inside. He admitted to using that firearm to shoot all three victims and claimed that he did so in self-defense.

While [] Appellant adequately raised self-defense such that we charged the jury with the self-defense jury instructions, the jury was not required to credit his testimony. Evidence was presented at trial that [] Appellant made a U-turn to follow and once again engage with [] Taffanelly at the intersection of River Street and North Street after the initial confrontation outside [] Appellant's residence. [] Appellant acknowledged that he retreated to his vehicle but chose to arm himself rather than retreating to safety. Dr. Gary Ross, a forensic pathologist, was called as an expert witness by the Commonwealth testified that [] Taffanelly was shot six times. He testified that at least two of the bullets were fired into his back. Moreover, he testified that some of the gunshot injuries and recovered bullets exhibited features consistent with the shots having been fired into the victim's body while he laid on the ground. This evidence, when considered in the context of a sufficiency challenge which grants the Commonwealth every favorable inference as the verdict winner, persuades us that the jury was presented with evidence sufficient to disprove his self-defense claim beyond a reasonable doubt.

Trial Ct. Op. at 7-8 (citations omitted and some formatting altered).

Based on our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the evidence was sufficient to sustain Appellant's convictions

for voluntary manslaughter of Taffanelly and aggravated assault of Liliana. **See Palmer**, 192 A.3d at 89. As noted by the trial court, the Commonwealth presented evidence that it was possible for Appellant to safely retreat because Appellant had returned to his vehicle before Taffanelly and Liliana had gotten close enough to strike Appellant. **See** Trial Ct. Op. at 7-8; **see also** N.T. Trial, 8/31/22, at 313, 317, 329, 336, 352, 364-65. Therefore, the evidence is sufficient to establish that Appellant had the ability to retreat with complete safety. **See McClendon**, 874 A.2d at 1230.

Further, it is undisputed that after the confrontation outside Appellant's apartment building, Appellant and the victims drove onto River Street, headed in separate directions. **See** N.T. Trial, 8/31/22, at 308-09, 349, 361-62, 400. Appellant acknowledged that when he and the victims drove away from his apartment building "the confrontation was over." **See id.** at 400. Appellant then made a U-turn on River Street and drove towards the victims' car. **See id.** at 302, 309, 350, 362, 401. Appellant then ran a red light, parked his car, and got out. **See id.** at 302, 312-13, 349-50, 362, 401, 431. Appellant then verbally taunted the victims. **See id.** at 302, 312-13, 336, 350, 421. Therefore, the evidence is sufficient to establish that Appellant provoked the use of force in a second confrontation after the victims had driven away from his apartment building. **See Smith**, 97 A.3d at 788; **McClendon**, 874 A.2d at 1230.

Lastly, to the extent Appellant argues that Liliana's testimony was inconsistent with other evidence, that claim goes to the weight of the

evidence, not its sufficiency. *See **Barkman***, 295 A.3d at 733; ***Johnson***, 180 A.3d at 478; ***Lyons***, 833 A.2d at 258.

For these reasons, the Commonwealth has disproven Appellant's claim of self-defense beyond a reasonable doubt, and Appellant is not entitled to relief on this claim. *See **McClendon***, 874 A.2d 1230; *see also **Bullock***, 948 A.2d at 824.

## Sufficiency of the Evidence: Aggravated Assault

In his second issue, Appellant argues the evidence was insufficient to sustain his conviction of aggravated assault with respect to Jaimelynn. Appellant's Brief at 34-37. Specifically, Appellant claims that the Commonwealth failed to establish that Appellant intended to cause serious bodily injury to Jaimelynn nor did it prove that Jaimelynn sustained a serious bodily injury. *Id.* Appellant contends that Jaimelynn "suffered a single gunshot wound to her leg," and the Commonwealth did not present any expert medical testimony regarding the severity of Jaimelynn's gunshot wound. *Id.* at 35-36. Appellant also asserts that Jaimelynn's prolonged hospitalization was the result of treatment errors by the hospital staff which resulted in complications. *Id.*

Appellant further argues that where a complainant does not suffer serious bodily injury, the Commonwealth must prove the defendant intended to cause serious bodily injury. *Id.* at 36. Appellant asserts that the evidence was not sufficient to establish that he intended to cause Jaimelynn serious

- 10 -

bodily injury when he testified that he did not intend to shoot anyone prior to the confrontation, and he did not fire any additional shots at Jaimelynn.  ***Id.***

A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."  18 Pa.C.S. § 2702(a)(1).  Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S. § 2301.  A single gunshot wound to the leg that resulted in the victim being hospitalized constitutes a serious bodily injury.  ***See Commonwealth v. Phillips***, 410 A.2d 832, 834 (Pa. Super. 1979).

Additionally, we note that when reviewing a challenge to the sufficiency of the evidence regarding serious bodily injury, "[w]hether or not the complainant actually suffered serious bodily harm is irrelevant . . . as an attempt to inflict serious harm is as punishable as if the attempt succeeds." ***Commonwealth v. Caterino***, 678 A.2d 389, 391 (Pa. Super. 1996) (citation omitted).

> This Court has explained that
>
> it is certainly understood that the firing of a gun at another is likely to inflict death or serious injury.  Thus, when someone fires a handgun at another, it is assumed the intent was to inflict serious bodily injury or death.  The shooter might miss the target, or the bullet might strike something between the muzzle and the intended target or the bullet might simply graze the intended victim causing only superficial injury.  In these circumstances,

even though serious injury or death was not actually inflicted, it can be safely presumed the intent to inflict such injury was present because it is a common consequence of taking that action.

***Commonwealth v. Robinson***, 817 A.2d 1153, 1160 (Pa. Super. 2003).

Here, the trial court explained

[Jaimelynn] testified that she saw the Appellant aim and fire at her. She was shot in her left thigh above the knee. As a result of that injury, she received several blood transfusions, was intubated, and was hospitalized for approximately one week. Accordingly, sufficient evidence was presented to the jury to sustain [its] conclusion that Jamielynn Giraldo suffered serious bodily injury and that the Appellant at least recklessly caused that injury.

Trial Ct. Op. at 12-13 (citations omitted).

Based on our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the evidence was sufficient to sustain Appellant's conviction for aggravated assault of Jamielynn. ***See Palmer***, 192 A.3d at 89. Appellant shot Jaimelynn once in the upper leg, which required hospitalization and blood transfusions. ***See*** N.T. Trial, 8/31/22, at 316, 319. This gunshot wound constitutes a serious bodily injury. ***See Phillips***, 410 A.2d at 834.

Even if we accepted Appellant's argument that a single gunshot wound in the leg is not a serious bodily injury, Appellant's conviction can be sustained by the circumstantial evidence that Appellant intended to cause Jaimelynn serious bodily injury when he fired a gun at her. ***See Robinson***, 817 A.2d at 1160; ***Caterino***, 678 A.2d at 391. For these reasons, Appellant is not entitled to relief on this claim.

**Weight of the Evidence**

In his next issue, Appellant argues convictions were against the weight of the evidence because the witness testimony was contradictory. Appellant's Brief at 37-40. Specifically, Appellant claims that Liliana and Jaimelynn testified inconsistently about the number of shots Appellant fired, the order in which the victims were hit, and how far each victim was from Appellant. *Id.* at 39. Appellant also contends that Liliana's account of the number of times she was shot is not credible and inconsistent with the physical evidence recovered during the investigation. *Id.* at 39-40. Lastly, Appellant argues that the victims' intentional engagement of Appellant when they had a clear and safe opportunity to leave the area and Appellant's claim of self-defense "significantly call[s] into question" the jury's verdict. *Id.* at 40. Therefore, Appellant concludes that the verdict should be vacated as against the weight of the evidence.

> In reviewing a weight claim, this Court has explained:
>
> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the

verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015)

(citations and quotation marks omitted).

As this Court has repeatedly stated:

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

\* \* \*

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Spence***, 290 A.3d 301, 311 (Pa. Super. 2023) (citations

omitted and formatting altered).

Here, the trial court addressed Appellant's weight-of-the-evidence claim

as follows:

Here, we do not hesitate to conclude that there was more than ample evidence presented at trial to enable the finder of fact to

reach the conclusion that [] Appellant was guilty of the crimes for which he was convicted. We do not believe that the jury's verdict in this case would shock the conscience of a reasonable person who, like the jury, had an opportunity to hear the evidence presented at trial. Having presided over this trial, it is apparent to us that the jury credited the Commonwealth's witnesses over the argument and evidence presented by the defense. [] Appellant's allegation that the verdict is against the weight of the evidence is without merit.

Trial Ct. Op. at 14-15.

Based on our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's weight claim. *See Gonzalez*, 109 A.3d at 723. We note that credibility determinations and the resolution of conflicting evidence are exclusively within the province of the fact-finder. Instantly, the jury as factfinder decided the facts and was entitled to believe all, part, or none of the trial evidence, and this Court cannot substitute its judgment for that of the jury if it is supported by the record. *See Spence*, 290 A.3d at 311; *see also Smith*, 97 A.3d at 788 (explaining that "a fact-finder is not required to believe the testimony of the defendant who raises [a self-defense] claim" (citation omitted and formatting altered)). On this record we agree with the trial court that there was ample evidence presented to the jury for it to conclude that Appellant did not act in self-defense primarily because Appellant provoked the confrontation, that it was possible for Appellant to safely retreat, and that Appellant intended to inflict serious bodily injury on the victims. *See* Trial Ct. Op. at 7-8, 12-15. Therefore, the jury's verdict of guilt in this case does not shock the conscience and sense of justice of a reasonable person; accordingly, Appellant is not entitled to relief on his

weight-of-the-evidence claim. *See Gonzalez*, 109 A.3d at 723; *see also Commonwealth v. Schwartz*, 615 A.2d 350, 361 (Pa. Super. 1992).

## Discretionary Aspects of Sentence

In his next two issues, Appellant challenges the discretionary aspects of his sentence. First, Appellant argues that the trial court erred by imposing consecutive sentences resulting in an aggregate sentence of twenty to forty years' incarceration. Appellant's Brief at 40-42. Secondly, Appellant contends that there was insufficient evidence to support the trial court's restitution order in the amount of $9,000. *Id.* at 42-44.

The Commonwealth responds that Appellant failed to raise a substantial question regarding consecutive sentences. Commonwealth's Brief at 21-22. The Commonwealth also argues that it presented testimony to support the restitution order, and the Commonwealth was not required to present corroborating documentation where the trial court finds the testimony credible. *Id.* at 25-26.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

- 16 -

***Commonwealth v. Corley***, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); ***see also*** Pa.R.A.P. 302(a).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Battles***, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** at 1090-91 (citation omitted). Lastly, "where a defendant merely asserts that his sentence is inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing scheme without explaining how or why, we cannot determine whether he has raised a substantial question." ***Commonwealth v. Goggins***, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*).

Here, the record reflects that Appellant preserved his sentencing claims in a post-sentence motion, filed a timely notice of appeal, and included the issues in his Rule 1925(b) statement. In his Rule 2119(f) statement, Appellant argues that the trial court abused its discretion by imposing a lengthier

sentence for aggravated assault of Jamielynn than for voluntary manslaughter, imposing consecutive sentences, and the amount of restitution imposed was not supported by the record. Appellant's Brief at 27.

We conclude that Appellant's claim about his sentence for aggravated assault of Jamielynn is too vague to present a substantial question because Appellant does not explain why that is inconsistent with the sentencing code or contrary to the fundamental norms which underlie the sentencing process other than bald assertions of excessiveness. *See Goggins*, 748 A.2d 727; *Battles*, 169 A.3d at 1090-91.

Further, Appellant's claim regarding consecutive sentences does not raise a substantial question.[4] *See Commonwealth v. Zirkle*, 107 A.3d 127, 123 (Pa. Super. 2014) (stating "[a] challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. We see no reason why [a defendant] should be afforded a 'volume discount' for his crimes by having all sentences run concurrently" (citations and some quotation marks omitted)).

However, we conclude that Appellant's challenge to the evidence supporting the restitution order raises a substantial question for our review.

---

[4] We note that to the extent that Appellant argues that these offenses were a single criminal episode, which could be considered a merger claim, his sentences here do not merge because they involve three separate victims. *See, e.g.*, *Commonwealth v. Hernandez*, 230 A.3d 480, 488 (Pa. Super. 2020) (concluding that "[b]ecause [the defendant's] crimes implicated different victims as charged and convicted, no merger results" (citations omitted)); 42 Pa.C.S. § 9765.

*See, e.g.*, *Commonwealth v. Pappas*, 845 A.2d 829, 841-42 (Pa. Super. 2004) (finding a substantial question where the defendant claimed that there was insufficient evidence of the value of the stolen property to support the restitution order).[5]

Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

Restitution may be imposed only for those crimes to property or person where the victim suffered a loss that flows from the conduct that forms the basis of the crime for which the defendant is held criminally accountable.

In computing the amount of restitution the sentencing court "[s]hall consider the extent of injury suffered by the victim and such other matters as it deems appropriate." 18 Pa.C.S.[] § 1106(c)(1)." To determine the correct amount of restitution, a

---

[5] We note that challenges to a restitution order may implicate the legality of the sentence, the discretionary aspects of the sentence, or both. *See* *Commonwealth v. Weir*, 239 A.3d 25, 37 (Pa. 2020). Indeed, challenges involving the trial court's statutory authority to impose an order of restitution pursuant to 18 Pa.C.S § 1106 implicate the legality of the sentence. *See id.* However, when the challenge involves "the manner in which the [trial] court exercise[d] that authority in fashioning the restitution[,]" such as determining the amount of restitution, the challenge "implicates the discretionary aspects of the sentence." *Id.*

"but-for" test is used—damages which occur as a direct result of the crime are those which should not have occurred but for the defendant's criminal conduct.

***Pappas***, 845 A.2d at 842 (some citations omitted and some formatting altered); ***see also Commonwealth v. Yanoff***, 690 A.2d 260, 265-67 (Pa. Super. 1997) (affirming portion of the restitution order which included funeral expenses for the victim).

This Court further explained:

Although restitution does not seek, by its essential nature, the compensation of the victim, the dollar value of the injury suffered by the victim as a result of the crime assists the court in calculating the appropriate amount of restitution. A restitution award must not exceed the victim's losses. A sentencing court must consider the victim's injuries, the victim's request as presented by the district attorney and such other matters as the court deems appropriate. The court must also ensure that the record contains the factual basis for the appropriate amount of restitution. In that way, the record will support the sentence.

***Commonwealth v. Burwell***, 58 A.3d 790, 794 (Pa. Super. 2012) (citations omitted); ***see also Pappas***, 845 A.2d at 842 (explaining that "[b]ecause restitution is a sentence, the amount ordered must be supported by the record; it may not be speculative or excessive" (citations omitted)).

This Court has held that the record supports the amount of restitution ordered where the victim testified about the value of the loss the victim suffered as a result of the defendant's actions and the trial court found the victim's testimony credible. ***See Commonwealth v. Rush***, 909 A.2d 805, 810 (Pa. Super. 2006).

Here, the trial court explained:

Because the victim in this case suffered a financial loss as a direct result of [] Appellant's crime, [the trial court was] required to Order [] Appellant to pay restitution to the victim. 18 Pa.C.S. [§] 1106(a). At [] Appellant's sentencing, testimony represented that Mr. [Taffanelly]'s funeral cost was between $9,000 and $10,000 dollars. We found that testimony to be credible and in line with the court's understanding of the cost of funerals. Accordingly, we ordered [] Appellant to pay restitution to the victim[s] in the sum of $9,000 for the cost of [] Taffanelly's funeral.

Trial Ct. Op. at 18-19 (some citations omitted and some formatting altered).

Based on our review of the record, we discern no abuse of discretion in the trial court's order that Appellant pay the victims $9,000 for the costs of Taffanelly's funeral. **See Raven**, 97 A.3d at 1253. Here, the Commonwealth presented the testimony of Jaimelynn at sentencing, and she stated that the funeral costs were "[a]round $9,000 - $10,000[.]" **See** N.T. Sentencing, 11/9/22, at 37. The trial court credited Jaimelynn's testimony, therefore, there is a sufficient factual basis to support the amount of restitution. **See Burwell**, 58 A.3d at 794; **Rush**, 909 A.2d at 810. Therefore, the record supports the amount of the trial court's restitution order, and Appellant is not entitled to relief on this claim.

### Legality of Sentence

Finally, we must address the legality of the restitution order. **See Commonwealth v. Wright**, 276 A.3d 821, 827 (Pa. Super. 2022) (noting that questions regarding the legality of the sentence questions "are not waivable and may be raised *sua sponte* on direct review by this Court" (citation omitted and formatting altered)). Our Supreme Court stated that "a challenge to the sentencing court's authority to order restitution raises a non-

waivable legality of sentencing issue." **Weir**, 239 A.3d at 37. A challenge to the legality of the sentence "presents a pure question of law. As such, our scope of review is plenary and our standard of review *de novo*." **Wright**, 276 A.3d at 827 (citations omitted and formatting altered).

Section 1106 of the Crimes Code provides in relevant part, "[u]pon conviction for any crime wherein . . . the victim, if an individual, suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor." 18 Pa.C.S. § 1106(a)(2).

Section 1106 also provides:

> **(c) Mandatory restitution.**—
>
> (1) The court shall order full restitution:
>
>> (i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. . . .
>
>                *     *     *
>
> (2) **At the time of sentencing the court shall specify the amount and method of restitution**. In determining the amount and method of restitution, the court:
>
>> (i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney . . . and such other matters as it deems appropriate.
>>
>> (ii) **May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.**

18 Pa.C.S. § 1106(c)(1)(i), (2)(i)-(ii) (emphases added).

This Court has recently stated that

> restitution must properly be included in a sentence. The Superior Court held these requirements provide the defendant with certainty as to his sentence, and at the same time allow for subsequent modification if necessary. Failure to comply with Section 1106(c)(2) results in an illegal sentence.

*Commonwealth v. Royal*, --- A.3d ---, 2024 PA Super 29, 2024 WL 678060, at *6 (Pa. Super. filed Feb. 20, 2024) (citations omitted and formatting altered).

In *Royal*, the trial court ordered the defendant to pay $4,568.95 in restitution following his conviction for six counts of retail theft. *Royal*, 2024 WL 678060, at *2, *6. "However, the trial court did not specify the **method** of restitution at the sentencing hearing, instead including it in the sentencing order." *Id.* at *6 (emphasis in original). The *Royal* Court vacated the judgment of sentence, concluding that "the trial court's failure to specify the method of payment at the sentencing hearing rendered that portion of [the defendant's] sentence illegal[]" and remanded for resentencing for the trial court to reimpose restitution and specify, on the record, the method of payment. *Id.*

Here, on this record, the trial court properly ordered Appellant to pay $9,000 in restitution to Taffanelly's family to compensate them for the costs of Taffanelly's funeral. However, the trial court did not specify at the sentencing hearing nor in its written sentencing order the **method** of payment for the restitution, whether it be in a lump sum, by monthly installments, or

- 23 -

according to such other schedule as the trial court deems just. *See* N.T. Sentencing, 11/9/22, at 51-52; Sentencing Order, 405-2021, 11/9/22. Therefore, we are constrained to conclude that the trial court's restitution order is an illegal sentence because it did not specify the method of payment at the sentencing hearing as required by 18 Pa.C.S. § 1106(c)(2), nor in the sentencing order.[6] *See Royal*, 2024 WL 678060, at *6.

For these reasons, we affirm Appellant's convictions, affirm the judgment of sentence in part, and vacate the judgment of sentence as to restitution only. We remand for resentencing limited to the reimposition of $9,000.00 in restitution and an on-the-record specification of the method of payment.

Judgment of sentence affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[6] "Pennsylvania appellate courts apply the law in effect at the time of the appellate decision. This means that we adhere to the principle that, a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final." *Commonwealth v. Chesney*, 196 A.3d 253, 257 (Pa. Super. 2018) (citations omitted and formatting altered).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/14/2024